UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAURICIO RODRIGUEZ AYALA,<br>Petitioner(s),<br>v.<br>TODD BLANCHE, et al.,<br>Respondent(s). | CASE NO. C26-2186-KKE<br>ORDER GRANTING HABEAS PETITION |

After Petitioner was arrested and detained by United States Immigration and Customs Enforcement ("ICE") agents, he filed a *pro se* petition for a writ of habeas corpus under 28 U.SC. § 2241. Dkt. Nos. 1, 6. His petition argues that his detention is unlawful because it violates his constitutional right to procedural due process. Dkt. No. 6 at 3–7. The Government[1] has filed its return, arguing that Petitioner is lawfully subject to mandatory detention under 8 U.S.C. § 1225(b). Dkt. No. 12. For the following reasons, the Court will grant the petition.

## I. BACKGROUND

Petitioner is a citizen of Mexico who was born in 1994 and entered the United States as a child at an unknown place on an unknown date before September 18, 2012. Dkt. No. 13 ¶¶ 3–4; Dkt. No. 14-1 at 2. On September 18, 2012, Petitioner was detained by ICE agents after he was arrested as a juvenile for drug crimes, and removal proceedings commenced. Dkt. No. 13 ¶¶ 4–5,

[1] In this order, the Court refers to the federal Respondents collectively as "the Government."

Dkt. No. 14-2. Petitioner was released on bond in October 2012, and was subsequently charged with and/or convicted of several state-law crimes in the months and years that followed. Dkt. No. 13 ¶¶ 8, 15. ICE issued a warrant for Petitioner's arrest in June 2013, and Petitioner was released on an Order of Recognizance ("OREC") the same day. *Id.* ¶¶ 9–10, Dkt. No. 14-3.

Petitioner was ordered removed to Mexico in March 2021, and the immigration judge denied his application for relief. Dkt. No. 13 ¶ 12. Petitioner appealed the order of removal to the Board of Immigration Appeals. *Id.* ¶ 13. Petitioner did not file a brief in support of his appeal by the deadline, but the BIA has not adjudicated or dismissed Petitioner's appeal and it remains pending. *Id.* ¶¶ 14, 18–19.

On May 8, 2026, ICE agents arrested Petitioner and terminated his OREC, and he has been detained since then. Dkt. No. 14-4. In June 2026, Petitioner filed a petition for a writ of habeas corpus requesting immediate release from detention. Dkt. Nos. 1, 6. For the following reasons, the Court finds that Petitioner's re-detention does not comport with due process and therefore grants the habeas petition.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements. [2]

**A. Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and remains in custody more than two months later undoubtedly presents a deprivation of Petitioner's interest in his liberty.

[2] Although the Government notes that Petitioner could have requested a bond hearing at any time after his arrest but had not (Dkt. No. 12 at 13–14), thereby contending that Petitioner has failed to exhaust his administrative remedies, the Court waives any prudential exhaustion requirement given the potential for irreparable injury that may result from unlawful detention. *See Laing v. Ashcroft*, 370 F.3d 994, 998, 1000–01 (9th Cir. 2004). Thus, the Court will consider the habeas petition on its merits.

While Petitioner's criminal history may ultimately prove to be changed circumstances warranting re-detention, the Government's return does not rely on that history to trigger mandatory detention. Instead, the Government argues that because Petitioner is an applicant for admission, he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Dkt. No. 12 at 7–8. Petitioner's status as a person who was released on supervision and has been living in this country since he was a child counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g., Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).[3] "The overwhelming

[3] The Government cites, among other things, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026), and *Avila v. Bondi*, 170 F.4th 1128, 1135–36 (8th Cir. 2026), as support for its position here that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). *See* Dkt. No. 12 at 8. With respect to the Fifth and Eighth Circuits, these decisions are not binding on this Court, and are inconsistent with this Court's view of the statutory text and relevant Ninth Circuit and Supreme Court authority interpreting it.

majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). The Government's interpretation of § 1225(b) is unpersuasive when the statutory scheme is read as a whole, when this subsection is read in conjunction with its implementing regulations, and when the subsection is read against the backdrop of shifting agency pronouncements. *See, e.g.*, *Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1149–53 (N.D. Cal. 2025).

For these reasons, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner is detained under Section 1226(a) rather than Section 1225(b). Furthermore, the Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Accordingly, the first *Mathews* factor favors Petitioner.

**B. The Risk of Erroneous Deprivation of Liberty Without a Hearing is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds that the risk of erroneous deprivation of Petitioner's liberty interest is high.

As described earlier in this order, on May 8, 2026, Petitioner was arrested and detained and his OREC was cancelled. *See* Dkt. No. 14-4. It is undisputed that Petitioner did not receive notice or an opportunity to be heard on the OREC revocation before he was re-detained. *See* Dkt. No. 12 at 10. The absence of procedural safeguards leads to a significant risk of an erroneous deprivation of Petitioner's liberty.

Accordingly, the Court finds that the second *Mathews* factor favors Petitioner. *See Doe*, 787 F. Supp. 3d at 1094.

**C. The Government's Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before re-detention, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

For these reasons, the Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is minimal: any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. Accordingly, the third *Mathews* factor favors Petitioner.

The Court's review of the *Mathews* factors indicates that all three favor Petitioner, and the Court concludes that Petitioner's re-detention does not comport with due process. *See Singh v. Warden*, No. 1:26-cv-00030 DJC SCR, 2026 WL 1113792, at *3 (E.D. Cal. Apr. 24, 2026)

(recommending a finding that a petitioner's due process rights were violated when he was re-detained without a pre-deprivation hearing after release from jail with a pending robbery charge).

## III. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court finds his detention unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, given that the information known to the Government at the time of Petitioner's arrest may demonstrate a legitimate interest in his detention, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is a bond hearing. *See Singh v. Andrews*, No. 1:26-cv-05073-JLT-FJS, 2026 WL 2018617, at *2 (E.D. Cal. July 13, 2026) (finding that although "release is often appropriate when the Government has failed to provide a pre-deprivation hearing," a hearing was nonetheless an appropriate remedy for a due process violation when an arrest report contains information indicating that the Government "may well have a legitimate interest in Petitioner's detention" (citing *Singh v. Chestnut*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *4 (E.D. Cal. Cal. Feb. 2, 2026))); *Caglar v. Wamsley*, No. 2:26-cv-00787, 2026 WL 1123515, at *3–4 (W.D. Wash. Apr. 24, 2026) (emphasizing the flexibility of the *Mathews* test to find that where a petitioner's OREC is revoked due to alleged public safety violations, "a post-arrest hearing is sufficient" to satisfy the Due Process Clause). At the hearing, the Government must demonstrate

the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089; *Caglar*, 2026 WL 1123515, at *4.

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 6. Petitioner's motions to appoint counsel (Dkt. Nos. 9, 15) are DENIED AS MOOT. The Court ORDERS that the Government shall provide Petitioner an individualized bond hearing no later than August 4, 2026, unless Petitioner consents to a later date. The Government is ORDERED to file a status report no later than August 7, 2026, to confirm that Petitioner was provided the bond hearing as described in this order.

Dated this 21st day of July, 2026.

Kymberly K. Evanson
United States District Judge